IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| LAMAR ANDERSON, #M32519,<br><br>    Plaintiff,<br><br>v.<br><br>MOHAMMED SIDDIQUI, *et al.*,<br><br>    Defendant. | Case No. 22-cv-00221-SPM |

## MEMORANDUM AND ORDER

**MCGLYNN, District Judge:**

This matter is before the Court on motions for summary judgment on the issue of exhaustion filed by Defendants Siddiqui, Caldwell, Lang, and Crain. (Doc. 34, 37). Plaintiff has filed a response in opposition to the motions, and Defendants Siddqui and Caldwell filed a reply brief. (Doc. 42, 43). For the following reasons, the motions are denied.

### BACKGROUND

Plaintiff Lamar Anderson, an inmate of the Illinois Department of Corrections who is currently incarcerated a Western Illinois Correctional Center, initiated this action pursuant to 42 U.S.C. § 1983 for violations of his constitutional rights that occurred at Menard Correctional Center ("Menard"). In the Complaint, Plaintiff alleges that over seven years ago he developed eczema while at Stateville Correctional Center ("Stateville"). (Doc. 1). The condition causes his skin to crack, bleed, and itch. After trying various treatments, the medical providers at Stateville began to successfully treat Plaintiff's eczema with Benadryl and an ointment. At some point, Plaintiff was transferred to Pontiac Correctional Center ("Pontiac"), where the providers prescribed different medication for the eczema. These new medications did not work, and

eventually, Plaintiff resumed taking Benadryl and using the ointment prescribed at Stateville. The medical staff wrote the details concerning the unsuccessful and successful treatments in Plaintiff's medical files.

On December 4, 2016, Plaintiff was transferred to Menard. Once Plaintiff finished his eczema medication, Benadryl and the ointment, that had previously been prescribed and successful at both Stateville and Pontiac, medical staff at Menard refused to renew his prescriptions. Rather, they prescribed medicines that they knew did not effectively treat his condition. Plaintiff wrote a grievance, and Defendants renewed the Benadryl prescription. However, when this prescription was completed, Nurse Lang refused to provide Plaintiff with a refill and stated they were going to try another medication. Plaintiff spoke to Dr. Siddiqui, Dr. Caldwell, and Nurse Practitioner Moldenhauer about how the new treatment for his eczema was not working. Despite these conversations, Defendants continued to not renew the Benadryl and ointment prescription. Eventually, after filing a grievance, Plaintiff received a prescription for Benadryl and his ointment cream, but he repeatedly would not receive timely refills or follow-up appointments.

Following review of the Complaint pursuant to 28 U.S.C. §1915A, Plaintiff is proceeding with an Eighth Amendment deliberate indifference claim against Dr. Siddiqui, Dr. Caldwell, Nurse Practitioner Moldenhauer, Health Care Unit Administrator Crain, and Nurse Lang for failing to provide him adequate treatment for his eczema. (Doc. 8).

On November 13, 2023, Defendants Siddiqui, Caldwell, Crain, and Lang filed motions for summary judgment arguing that Plaintiff failed to exhaust his administrative remedies prior to initiating this lawsuit, and therefore, his claims against them should be dismissed. (Doc. 34, 35, 37).[1] Plaintiff opposes the motions. (Doc. 42).

---

[1] Defendant Moldenhauer did not file a motion for summary judgment on the issue of exhaustion by the deadline of November 13, 2023, so the defense is **DEEMED WAIVED** by this Defendant. (*See* Doc. 31).

**LEGAL STANDARDS**

I. *Summary Judgment*

Summary judgment is proper only if the moving party can demonstrate "that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." *See* FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Any doubt about the existence of a genuine issue must be resolved in favor of the nonmoving party. *Lawrence v. Kenosha Cty.*, 391 F.3d 837, 841 (7th Cir. 2004). The moving party is entitled to judgment as a matter of law when the pleadings, answers to interrogatories, depositions, and admissions, along with affidavits, show that there is no genuine issue of material fact. FED. R. CIV. P. 56(c).

Courts generally cannot resolve factual disputes on a motion for summary judgment. *See Tolan v. Cotton*, 572 U.S. 650, 656 (2014) ("[A] judge's function at summary judgment is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.") (internal quotation marks and citation omitted). However, when the motion for summary judgment pertains to a prisoner's failure to exhaust administrative remedies, the Seventh Circuit has instructed courts to conduct an evidentiary hearing and resolve contested issues of fact regarding a prisoner's efforts to exhaust. *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008); Roberts v. Neal, 745 F. 3d 232, 236 (7th Cir. 2014). Where there is no disputed issue of fact, a hearing is not necessary.

II. *Exhaustion of Administrative Remedies*

Lawsuits filed by inmates are governed by the provisions of the Prison Litigation Reform Act ("PLRA"). 42 U.S.C. § 1997e(a). The PLRA states, in pertinent part, that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative

remedies as are available are exhausted." *Id*. The Seventh Circuit requires strict adherence to the PLRA's exhaustion requirement. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) (noting that "[t]his circuit has taken a strict compliance approach to exhaustion"). Exhaustion of available administrative remedies must occur before the suit is filed. *Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004). Moreover, "[t]o exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2005). Consequently, if a prisoner fails to properly utilize a prison's grievance process, "the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted." *Dole*, 438 F.3d at 809. The statutory purpose of the PLRA is to "afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). This allows the prison administration an opportunity to fix the problem or to reduce the damages and perhaps shed light on factual disputes that may arise in litigation even if the prison administration's solution does not fully satisfy the prisoner. *See Pozo,* 286 F.3d at 1023-24. To allow otherwise would frustrate the purpose of the grievance process. *See Porter v. Nussle*, 534 U.S. 516, 526 (2002).

### III. *Grievance Procedure*

As an inmate in the custody of IDOC, Plaintiff was required to follow the grievance procedures laid out in the Illinois Administrative Code ("grievance procedures"). 20 ILL. ADMIN. CODE § 504.800, *et seq*. The grievance procedures direct an inmate is to file a grievance first with the Counselor within 60 days of the discovery of an incident. *See* 20 ILL. ADMIN. CODE § 504.810(a). The grievance form must:

> [C]ontain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint. This provision does not preclude an offender from filing a grievance when the names of individuals are not

> known, but the offender must include as much descriptive information about the individual as possible.

20 ILL. ADMIN. CODE § 504.810(c). Grievances that are unable to be resolved through routine channels are then sent to a Grievance Officer. *See* 20 ILL. ADMIN. CODE § 504.820(a). The Grievance Officer will review the grievance and provide a written response to the inmate. *See* 20 ILL. ADMIN. CODE § 504.830(a). The Grievance Officer must submit his findings to the Chief Administrative Officer ("CAO") within two months after receiving the grievance. 20 ILL. ADMIN. CODE § 504.830(e). The CAO then reviews the findings and recommendation of the Grievance Officer and issues a written decision to the inmate. *Id.* If the inmate is not satisfied with the response, he can file an appeal with the Administrative Review Board ("ARB"). *See* 20 ILL. ADMIN. CODE § 504.850(a). The ARB must receive the appeal within 30 days after the date of the decision by the CAO. *Id.* Only after a grievance is reviewed by the ARB is it deemed exhausted. *See Pozo*, 286 F.3d at 1023–24.

## ANALYSIS

There is one grievance that Defendants do not dispute was filed properly according to grievance procedures by Plaintiff, Grievance #236-10-21. In this grievance, which was filed as an emergency, Plaintiff recites the difficulties of receiving effective and consistent treatment for his eczema over the past six years at Stateville, Pontiac, and now at Menard. (Doc. 42, p. 41-42). He states that after his transfer to Menard in 2016, he had to file grievances in order to receive proper care for his eczema. He was eventually seen by a dermatologist who prescribed a cream and Benadryl. Despite being given a prescription by a specialist, he continues to not receive timely refills, and he routinely is not scheduled for follow-up exams with a nurse or a doctor when he completes his prescriptions, even after submitting medical care requests. As of filing the grievance, the last doctor he saw was Defendant Moldenhauer, who wrongly reduced his Benadryl

prescription to one pill a day. Moldenhauer told Plaintiff that he would again refer Plaintiff to see a dermatologist, but Plaintiff complains that he has not had an appointment. Plaintiff also grieves that he has been in segregation for a week and been denied Benadryl and his ointment since his cell transfer. He states that he has stopped nurses and submitted sick call slips requesting his medicine but was told that "getting Benadryl was a onetime thing." Plaintiff requests to see a "skin doctor or a medical judge," and to have all his "rights to file a 2-1401 about this on-going situation [he has] been having for the past 6 years." Plaintiff writes, "This is a[n] emergency. [I'm] in pain." (*Id.*).

Defendants argue that Grievance #236-10-21 cannot serve to exhaust Plaintiff's claims because it does not meet the grievance content requirements laid out in the grievance procedures and fails to properly put Menard on notice of the alleged problems involving them. The grievance procedures specifically direct inmates to provide the "name of each person who is the subject of or who is otherwise involved in the complaint" or "include as much descriptive information about the individual as possible." (Doc. 35, p. 13; Doc. 37, p. 7) (citing 20 ILL. ADMIN. CODE 504.810(c)). In Grievance #236-10-21, Plaintiff does not name the Defendants or describe their individual conduct or their participation in his care. Defendants state that Plaintiff's failure to identify them and include sufficient factual details regarding his allegations against them means that this grievance cannot exhaust his claims.

Plaintiff argues that he wrote Grievance #236-10-21 to grieve the overall poor medical care he had received for his skin condition at Menard. (Doc. 42, p. 11-12). He points out that in the grievance he provides details about his treatment since 2015 and how he has had to continuously file grievances and sick call requests in order to be seen by a dermatologist and receive medication refills. Plaintiff argues that Grievance #236-10-21 sufficiently informs Menard that he has been

denied adequate medical care and an effective course of treatment by all the doctors and nurses who have treated him since his transfer. (*Id.*).

The Court agrees with Plaintiff that Grievance #236-10-21 meets the content requirements of the grievance procedures and sufficiently put prison officials on notice regarding his issues with receiving adequate medical care while at Menard. Contrary to Defendants' arguments, Grievance #236-10-21 is not limited to Plaintiff's discontentment with his treatment by Moldenhauer. He clearly grieves with sufficient particularity the ongoing issues he has had with his treatment since his transfer. Although, Plaintiff does not name the individual defendants in his grievance, this omission is not "fatal to the issue of exhaustion." *See Arce v. Wexford Health Services*, No. 18-cv-1348-SMY-GCS, 2019 WL 6702692, at *5 (Oct. 9, 2019). The grievance process is not intended to provide individual notice to each defendant who might be sued later, and a grievance is not "per se inadequate simply because an individual later sued was not named in the grievances." *Jones v. Bock*, 549 U.S. 199, 219 (2007). In cases such as this, "where Plaintiff is claiming a broad denial of treatment by the health care unit as a whole, he will not be found at fault for failing to name each, individual health care provider." *Morgan v. Carter,* No. 12 C 6445, 2012 WL 5877481, at *2 (N.D. Ill. Nov. 19, 2012). In Grievance #236-10-21, Plaintiff clearly states that he is continually is being denied effective treatment and needed medication. He also claims he is not being scheduled for necessary appointments with medical providers, inside and outside the facility. The grievance serves its function of providing Menard officials with (1) notice of Plaintiff's constant issues receiving adequate medical care for his eczema, which involves all members of his healthcare team, and (2) enough information for officials to investigate and attempt to alleviate the problem. *See Maddox v. Love*, 655 F.3d 709, 722 (7th Cir. 2011) (citing *Jones*, 549 U.S. at 219; *Turley v. Rednour*, 729 F.3d 645, 649 (7th Cir. 2013)). Thus, the grievance successfully serves to

exhaust Plaintiff's claims against medical providers Dr. Siddiqui, Dr. Caldwell, and Nurse Lang.

As for Health Care Administrator Crain, Plaintiff claims that she was deliberately indifferent to his medical needs and contributed to the denial of adequate medical care by reviewing his grievance and providing false information in her response. (Doc. 1, p. 4). Because Crain was a part of the grievance process and provided a detailed response to the Counselor after reviewing Grievance #236-10-21, Plaintiff did not need to file a separate, additional grievance against Crain. *See Barrow v. Wexford Health Sources, Inc.*, No. 14-CV-800-NJR-DGW, 2015 WL 5010104, at *4 (S.D. Ill. Aug. 24,2014) ("Relevant case law demonstrates that a previously submitted grievance will suffice to exhaust for future events so long as the prisoner remained in the same situation."). "[C]ourts have found that prison officials who are named in grievance responses, or who directly participate in fielding grievances have ample notice for exhaustion purposes." *Tacket v. Mitchell,* No. 22-cv-1260-DWD, 2024 WL 1483988, at *4 (S.D. Ill. Apr. 5, 2024) (citations omitted). Grievance #236-10-21 provided Crain with notice of his dissatisfaction with the care he was receiving, and she had an opportunity to investigate and intervene if necessary, and therefore, he exhausted his claims against her.

Because the Court finds that Grievance #236-10-21 served to exhaust Plaintiff's claims against Defendants, the Court will not address the other three grievance also submitted by Defendants in support of their motion for summary judgment.[2]

## DISPOSITION

For the reasons stated above, the motion for summary judgment filed by Caldwell and Siddiqui is **DENIED**, and the motion for summary judgment filed by Crain and Lang is **DENIED**. (Doc. 34, 37).

---

[2] Grievance dated February 1, 2017, Grievance #434-3-18, and Grievance #191-11-19.

The stay on merits discovery is **LIFTED**, and the parties can proceed with discovery on the merits. A new scheduling order will be entered by separate order.

**IT IS SO ORDERED.**

**DATED:**   **August 21, 2024**

    *s/Stephen P. McGlynn*
**STEPHEN P. MCGLYNN**
**United States District Judge**